James H. McClelland, Appellant, *v.* Commonwealth of Pennsylvania, State Civil Service Commission, Appellee.

340

Argued June 4, 1974, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*David W. Ketler*, with him *Wherry and Ketler*, for
appellant.

*Marx S. Leopold*, Assistant Attorney General, with
him *Israel Packel*, Attorney General, for appellee.

OPINION BY JUDGE BLATT, July 17, 1974:

On Saturday, April 14, 1973, Secretary of Public Welfare, Helene Wohlgemuth, inspected the Polk State School and Hospital (Polk), a Commonwealth institution for the retarded which is administered by the Department of Public Welfare (DPW). Polk is a large institution, approximately seventy-five years old, with a rated capacity of 1,800 patients and a staff of 1,850 employees. At the time in question, it had a resident population of 2,800, of whom possibly two-thirds were severely or profoundly retarded, while the remainder were either border-line, mildly or moderately retarded. During the course of her inspection, the Secretary observed "cages" or "pens," in one of which she saw a person confined. It was subsequently determined that Polk had five such pens, two of which had tops and were approximately five feet square and about five feet high. The other three pens were larger in area and had no tops. All were allegedly used only for the immediate control of mental retardates with psychotic tendencies who became hyperactive and thus constituted a danger to themselves as well as to other patients and to attendants. Secretary Wohlgemuth orally directed Superintendent James H. McClelland to remove the pens, which he agreed to do at once, and they were removed.

As a result of this visit, Secretary Wohlgemuth decided to remove Dr. McClelland as superintendent, and by letter dated April 16, 1973, she notified him of his dismissal effective May 1, 1973. The letter to Dr. McClelland set forth the following charges as the basis for his removal:

"1. The cruel, degrading, and inhumane conditions which I personally observed during my visit on April 14, 1973. This refers specifically to the locked 'cages' and pens in which you authorized the confinement of patients.

"2. Severe and chronic deficiencies with respect to the proper training and orientation of professional and nonprofessional staff in the appropriate care and treatment of mentally retarded residents."

Dr. McClelland, who had been employed at Polk for approximately 32 years, appealed his dismissal to the State Civil Service Commission (Commission). After extensive hearings, the Commission, with one commissioner dissenting, upheld the removal, and Dr. McClelland has now appealed to this Court.

On an appeal to this Court from a Commission adjudication, we are required "to examine the record, not for the purpose of weighing the evidence and making a new determination, but rather for the purpose of determining whether the Commission exercised a reasonable discretion in making the findings. We may not substitute our judgment for that of the Commission and we must accept its findings if they are supported by evidence sufficient to convince a reasonable mind to a fair degree of certainty." *Commonwealth of Pennsylvania, Department of Revenue v. State Civil Service Commission,* 12 Pa. Commonwealth Ct. 400, 401, 316 A.2d 676, 677 (1974). It should be further noted that, the rules of the Commission, 4 Pa. Code §105.15(a), impose upon the appointing authority (here the DPW) the duty to go forward in the establishment of the charges upon which its personnel action is based and in so doing to establish a prima facie case in justification of that action. *Bleilevens v. State Civil Service Commission,* 11 Pa. Commonwealth Ct. 1, 312 A.2d 109 (1973).

In initially considering the scope of the charges brought against Dr. McClelland, we must note that much of the evidence presented by the DPW during the course of the hearings concerned charges relating to conditions at Polk which were not mentioned in either of the two charges made against Dr. McClelland by

Secretary Wohlgemuth. Moreover, at no time prior to the hearings did the DPW attempt to amend its charges or in any other manner to provide notice to Dr. McClelland of the additional charges which it would make at the hearing. It is clear, of course, that the constitutional guarantee of due process of law is equally as applicable to administrative proceedings as it is to judicial proceedings. *Gaudenzia, Inc. v. Zoning Board of Adjustment,* 4 Pa. Commonwealth Ct. 355, 287 A.2d 698 (1972). It is also clear that a vital element of due process is that notice must be given to the "accused" so that he may adequately prepare his defense. *Straw v. Pennsylvania Human Relations Commission,* 10 Pa. Commonwealth Ct. 99, 308 A.2d 619 (1973). Equally clear is the principle that, for such notice to be adequate, it must at the very least contain a sufficient listing and explanation of any charges so that the individual involved can know against what charges he must defend himself if he can. *Begis v. Industrial Board of the Department of Labor and Industry,* 9 Pa. Commonwealth Ct. 558, 308 A.2d 643 (1973).

Here the only charges of which Dr. McClelland actually had adequate notice prior to the hearing were the two contained in his dismissal letter. The additional charges raised at the hearing, therefore, were not properly before the Commission and will not, therefore, be considered by this Court in determining the propriety of Dr. McClelland's dismissal. We make no determination, of course, as to their merits.

In our consideration of the two charges of which Dr. McClelland was given adequate notice, we must keep in mind that, pursuant to Section 807 of the Civil Service Act, Act of Aug. 5, 1971, P.L. 752, *as amended,* 71 P.S. §741.807, Dr. McClelland could be removed only for "just cause." We have stated previously that "the legislative intent relating to one's relationship

with the classified service turns upon a merit concept. This means that any 'personnel action' carried out by the Commonwealth is to be scrutinized in the light of such merit criteria, as has the party failed to properly execute his duties, or has he done an act which hampers or frustrates the execution of same. The criteria must be job-related and in some rational and logical manner touch upon competency and ability." *Corder v. Civil Service Commission,* 2 Pa. Commonwealth Ct. 462, 467, 279 A.2d 368, 371 (1971).

The first charge against Dr. McClelland involves his use of pens to restrain certain residents. Such use, we believe, would constitute just cause for dismissal if it were carried out in violation of departmental regulations or standards or was so contrary to accepted practices of the profession as to create the "cruel, degrading, and inhumane conditions" said to exist. A review of the record, however, reveals that few standards which would be applicable to this situation were at any time prescribed by the DPW. The only standards apparently prescribed were: (1) the standards set forth in *Wyatt v. Stickney,* 344 F. Supp. 387 (M. D. Ala., 1972) and (2) the "Standards for Residential Facilities for the Mentally Retarded," prepared by the Joint Commission on Accreditation of Hospitals (JCAH). In Appendix A to *Wyatt, supra,* it was provided that: "Physical restraint shall be employed only when absolutely necessary to protect the resident from injury to himself or to prevent injury to others. Restraint shall not be employed as punishment, for the convenience of staff, or as a substitute for a habilitation program. Restraint shall be applied only if alternative techniques have failed only if such restraint imposes the least possible restriction consistent with its purpose." 344 F. Supp. at 401.

Similarly, Item 2.1.8.6 of the JCAH Standards provides: "Except as provided in Item 2.1.8.9 [which per-

tains to behavior modification programs], physical re-
straint *shall* be employed *only* when absolutely neces-
sary to protect the resident from injury to himself
or to others, and restraint *shall not* be employed as
punishment, for the convenience of staff, or as a substi-
tute for program." (Emphasis in original.) There-
after, Item 2.1.8.6.2 specifically provides: "Totally en-
closed cribs and barred enclosures shall be considered
restraints." Clearly these standards do not prohibit
all use of restraints even though the pens here in ques-
tion would meet the JCAH Standard definition of re-
straints. Only if such restraints are used contrary to
the purposes permitted, therefore, would such use con-
stitute a violation of these standards, yet there is no
competent evidence on the record to show that the pens
at Polk were so misused.

The DPW has not cited any other specific standards
which would be applicable here and with which Dr.
McClelland was specifically directed to comply. In
fact, the Commissioner of Mental Health, who visited
Polk in 1969 and 1972, observed the pens, and never
indicated that he disapproved of their use. Not only,
therefore, did Dr. McClelland have no reason to believe
that he was acting contrary to the desires of the DPW,
but the guidelines which he received as well as the fail-
ure of the Commissioner of Mental Health to criticize
his practice gave him every reason to believe that he
was acting consistently with the desires of the DPW.
Moreover, when he was eventually directed by Secretary
Wohlgemuth at the time of her visit to remove the
pens, he complied without hesitation.

The DPW urges, however, that the use of these pens
is so outmoded and so contrary to all accepted practices
in the treatment of the mentally retarded that the
approval of their use even without any directive or
guideline prohibiting such use constitutes just cause
for Dr. McClelland's dismissal. Only one expert wit-

ness for the DPW, Dr. Frank J. Menolascino, testified that he found the use of these pens to be inhumane. All other expert witnesses for the DPW stated only, at the most, that the use of such pens would be inappropriate, at least for their own institutions, none of which had the serious conditions of overcrowding and understaffing which prevailed at Polk. The most which the evidence indicates is that there is a difference of professional opinion as to the propriety of using pens to control hyperactive residents and to protect them from harming themselves and others. There was, of course, no evidence that pens were used for punishment or for any other admittedly improper use. We cannot, therefore, hold that the DPW has carried its burden of presenting sufficient evidence that the use of the pens either created "cruel, degrading, and inhumane conditions" or could constitute just cause for Dr. McClelland's dismissal.

Nor do we believe that sufficient evidence has been offered to substantiate the second charge against Dr. McClelland, which concerns the proper training and orientation of Polk personnel. Here the Commission relied completely upon testimony offered by Secretary Wohlgemuth and Dr. Menolascino. Secretary Wohlgemuth's testimony was to the effect that she had spoken to one male employee at Polk during her visit, who told her that he had not yet received his training. Dr. Menolascino's testimony was critical of procedures and management methods allegedly in use at Polk and he suggested what he considered to be more appropriate alternatives. He also testified, however, that he had never visited Polk personally, had never spoken to Dr. McClelland or to any member of the Polk staff and knew nothing about Polk's training, educational, medical or rehabilitation programs.

As to whether or not pens of any kind should ever be used at Polk, or should ever have been used, we

express no opinion. Nor do we express any opinion as to whether or not the training of personnel at Polk was adequate. We must conclude, however, that the evidence offered by the DPW before the Commission was insufficient to prove that either of the charges made against Dr. McClelland constituted just cause for his dismissal. We must also conclude, therefore, that the Commission abused its discretion in approving his dismissal.

For the above reasons, therefore, we issue the following

ORDER

Now, July 17, 1974, the appeal of Dr. James H. McClelland is sustained and he is ordered reinstated as Superintendent of Polk State School and Hospital with back pay from May 1, 1973.