Philadelphia County Board of Assistance, Department of Public Welfare, Petitioner *v.* Charles Vinson, Respondent.

Argued April 7, 1983, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and BARBIERI, sitting as a panel of three.

*Carl Vaccaro*, Deputy Attorney General, with him *LeRoy S. Zimmerman*, Attorney General, for petitioner.

*Terry L. Fromson*, for respondent.

OPINION BY JUDGE BARBIERI, July 19, 1983:

The Philadelphia County Board of Assistance (Board) appeals here from an adjudication of the State Civil Service Commission (Commission) ordering the reinstatement of Charles Vinson to his position as an Income Maintenance Worker I, probationary status. We reverse.

On January 30, 1981, the Board dismissed Mr. Vinson from his position as an Income Maintenance

Worker I, probationary status, because of convictions he had received on charges of robbery and conspiracy in 1979. Although the Board had been aware of Mr. Vinson's convictions when it hired him in August of 1980, the Board apparently felt that it had to offer Mr. Vinson the position since the Commission had rejected a Board request to have Mr. Vinson's name removed from the Commission's eligibility list for this position. After receiving additional legal advice, however, the Board concluded that it could dismiss Mr. Vinson from his position, and did so. In response to this dismissal Mr. Vinson requested, and received, a hearing on this matter before the Commission. After evaluating the evidence adduced at this hearing, the Commission issued an adjudication in which it made the following statement:

> [T]he relationship between appellant's conviction and his job responsibilities is tenuous. The acts underlying appellant's conviction occurred off-duty and are not likely to be duplicated on the job. Moreover, appellant occupied an entry level position with the appointing authority under close supervision, rather than a sensitive position with independent responsibilities.

The Commission then concluded that Mr. Vinson's appeal had to be sustained since "[t]he appointing authority discriminated against appellant by its use of a non-merit factor (*i.e.*, the prior criminal conviction) as the basis for removal." The present appeal followed.

"Our review of adjudications of the Civil Service Commission is limited to a determination of whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are unsupported by substantial evidence." *Brown v. De-*

*partment of Transportation,* 34 Pa. Commonwealth Ct. 461, 463, 383 A.2d 978, 979 (1978).

Here, the Board asserts (1) that there is not substantial evidence of record to support the Commission's findings that Mr. Vinson was under close supervision and didn't occupy a sensitive position, and (2) that the Commission erred as a matter of law by concluding that Mr. Vinson's dismissal was based upon discriminatory non-merit criteria. We agree.

The Commission concluded that Mr. Vinson's dismissal had been in violation of the mandate of Section 905.1 of the Civil Service Act (Act), Act of August 5, 1941, P.L. 752, *as amended,* added by Section 25 of the Act of August 27, 1963, P.L. 1257, 71 P.S. §741.905a which reads as follows:

> No officer or employe of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of political or religious opinions or affiliations because of labor union affiliations or because of race, national origin *or other non-merit factor.* (Emphasis added.)

We have recognized that under the provisions of Section 905.1

> any 'personnel action' carried out by the Commonwealth is to be scrutinized in the light of ... merit criteria, as has the party failed to properly execute his duties, or has he done an act which hampers or frustrates the execution of same. The criteria must be job-related and in some rational and logical manner touch upon competency and ability.

*Lusane v. State Civil Service Commission,* 5 Pa. Commonwealth Ct. 642, 646, 291 A.2d 808, 811 (1972)

(quoting *Corder v. State Civil Service Commission,* 2 Pa. Commonwealth Ct. 462, 467, 279 A.2d 368, 371 (1971)). This Court has also recognized that "if activities outside of the job reflect upon the employe's ability to perform his job, they can provide a basis either for removal or a lesser punishment." *Baron v. State Civil Service Commission,* 8 Pa. Commonwealth Ct. 6, 10, 301 A.2d 427, 429 (1973). Such activities may, of course, encompass off-the-job criminal conduct. *See, e.g., Department of Justice, Bureau of Corrections v. Grant,* 22 Pa. Commonwealth Ct. 582, 350 A.2d 878 (1976) (Corrections Officer I was properly dismissed after being arrested for violating the Uniform Firearms Act and possessing a stolen weapon); *Cotter v. State Civil Service Commission,* 13 Pa. Commonwealth Ct. 49, 318 A.2d 390 (1974) (A Management Analyst III for the Pennsylvania Department of Transportation was properly dismissed after being charged with being an accessory after the fact in the sale of a stolen vehicle); *Lusane* (A Child Care Aide I employed by the Pennsylvania Department of Public Welfare was properly dismissed after being arrested on charges of assault and battery, aggravated assault and battery, wantonly pointing a deadly weapon and assault with intent to maim in connection with an incident occurring outside of the scope of his employment).

In the present case, the only evidence submitted to the Commission pertaining to the nature of Mr. Vinson's duties and responsibilities as an Income Maintenance Worker was evidence submitted by the Board. The Board's Director of Personnel, Robert H. Freeman, and the Board's Executive Director, Don Jose Stovall, both testified (1) that Mr. Vinson's job consisted primarily of determining the financial eligibility of either current or potential recipients of pub-

lic assistance, (2) that Mr. Vinson made home visits in the course of his duties, and (3) Mr. Vinson had access to negotiable instruments. Both also testified that they felt that it was inappropriate to have an individual convicted of robbery and conspiracy making home visits and handling Commonwealth funds. With respect to this latter point, Bill Clark, the Supervisor of the Department of Public Welfare's Bureau of Special Investigations, testified, and Mr. Vinson's attorney agreed, that Income Maintenance Workers were in a position to defraud the Commonwealth of substantial sums of money. This fact was supported by Mr. Clark's testimony (1) that there had been twenty-one or twenty-two cases where Department of Public Welfare employees had been convicted of defrauding the Commonwealth, (2) that fifteen of those convicted had been Income Maintenance Workers, and (3) that in at least two of these cases Income Maintenance Workers had defrauded the Commonwealth of an amount in excess of $100,000. No evidence was presented at the hearing indicating that Mr. Vinson was more closely supervised than any other Income Maintenance Worker.

In light of the above testimony, we do not believe that the Commission's findings with respect to the nature of Mr. Vinson's duties are supported by the evidence of record. Instead, we believe that the undisputed evidence in this case indicates that Mr. Vinson occupied a highly sensitive position in which he was admitted into private homes and in which he had the opportunity to defraud the Commonwealth of substantial sums of money. Under such circumstances we believe that the Board could reasonably conclude that it would be inappropriate to have Mr. Vinson remain in his position in light of his criminal convictions. *See Lusane.* Accordingly, we believe the

Commission erred as a matter of law by concluding that Mr. Vinson's dismissal was discriminately based upon a non-merit factor.

In his brief to this Court, however, Mr. Vinson alleges, as he alleged below, that the Board should have been barred from challenging his eligibility for the position of Income Maintenance Worker I under the doctrine of res judicata since the Commission had earlier rejected a Board request to have his name removed from the Commission's eligibility list. We disagree.

In determining whether the doctrine of res judicata should be applied "[t]he essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appeal and assert their rights." Township of Ohio v. Builders Enterprises, Inc., 2 Pa. Commonwealth Ct. 39, 276 A.2d 556 (1971), aff'd, 446 Pa. 319, 284 A.2d 686 (1971). In the present case the record shows that there never was a prior proceeding before the Commission, only a request for the removal of Mr. Vinson's name and a subsequent denial of the request in a letter to the Board. No hearing was ever held on the matter, and no evidence or arguments were submitted by the Board. Accordingly, since there never had been a valid adjudication resolving the issue of whether Mr. Vinson was entitled to work for the Board, the doctrine of res judicata is not applicable to this case.

Finally, Mr. Vinson alleges that his dismissal was in violation of the provisions of Article I, Section I of the Pennsylvania Constitution which provides in pertinent part that "[a]ll men . . . have certain inherent and indefeasible rights, among which are . . . acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."

We find absolutely no merit in his argument, however, since nothing in Article I Section I of the Pennsylvania Constitution precludes the Commonwealth from dismissing individuals who are unsuitable for the positions they hold.

ORDER

Now, July 19, 1983, the Order of the State Civil Service Commission dated April 21, 1981, at Appeal No. 3282, is reversed.

AMENDED ORDER

Our order in the above captioned case dated July 19, 1983, is hereby amended to read as follows:

Now, July 26, 1983, the Order of the State Civil Service Commission dated January 29, 1982 at Appeal No. 3400, is reversed.