**Marvin J. WOODS, Jr., Petitioner**

v.

**STATE CIVIL SERVICE COMMISSION (NEW CASTLE YOUTH DEVELOPMENT CENTER, DEPARTMENT OF PUBLIC WELFARE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 27, 2004.

Decided Dec. 7, 2004.

Reargument Denied Feb. 1, 2005.

---

Allen Andrascik, Beaver Falls, for petitioner.

Jeffrey P. Schmoyer, Pittsburgh, for respondent.

BEFORE: COLINS, President Judge, and FRIEDMAN, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge FRIEDMAN.

Marvin J. Woods, Jr., (Woods) petitions for review of the January 13, 2004, order of the State Civil Service Commission (Commission), which dismissed Woods' challenge to his removal from employment with the New Castle Youth Development Center (Center). We reverse.

The Center is a residential site for children who are committed to the facility as a result of criminal charges against them. For twelve years, Woods was employed at the Center as a Youth Development Counselor (Counselor). A Counselor is a treatment specialist responsible for, *inter alia*, operating an assigned cottage and serving as a role model to the students and families with whom the Counselor must interact on a continual basis. (Findings of Fact, Nos. 4–7.)

On February 3, 2003,[1] state and local police arrived at the Center to arrest Woods on criminal charges of perjury, a third degree felony, and false swearing, a second degree misdemeanor. (Findings of Fact, Nos. 9, 11). At the request of Charles Mitcham, a Program Director at the Center, the officers waited and arrested Woods after the thirty-five students living in Woods' assigned cottage left for their daily activities. (Findings of Fact, No. 10.) That evening, the 6:00 p.m. television news aired coverage of the arrest. In addition, several newspapers and television stations publicized information about the arrest and the underlying incident leading to the criminal charges against Woods. (Findings of Fact, Nos. 12, 13.)

On February 4, 2003, the Center notified Woods by letter that he was suspended pending investigation of his felony arrest for perjury, a violation of the Governor's Code of Conduct 1980–18 Amended, Part III (Governor's Code).[2] (Findings of Fact, No. 1.) By letter dated May 1, 2003, Woods was removed from his Counselor position because "the felony charge finds you in violation of the [Governor's Code]."[3]

---

1. The date of arrest appears as February 4, 2003, in some documents; however, the police report identifies February 3, 2003, as the date of arrest. The Commission uses this date, and we will do the same.

2. The Governor's Code provides as follows:
   As soon as practicable after an employe has been formally charged with criminal conduct related to his employment with the Commonwealth *or which constitutes a felony,* the employe shall be suspended without pay. If the charge results in **conviction** in a court of law, the employe shall be terminated.
   4 Pa.Code § 7.173 (emphases added). However, the Governor's Code is *not* the law governing good cause for the suspension of a civil service employee. *See Aiello v. Department of Environmental Resources,* 122 Pa.Cmwlth. 216, 551 A.2d 664 (1988). Indeed, the Commission has promulgated regulations which specifically state that good cause for suspension is one of the following: (1) insubordination; (2) habitual lateness reporting for work; (3) misconduct amounting to violation of law, rule or lawful and reasonable departmental orders; (4) intoxication while on duty; (5) conduct either on or off duty which may bring the service of the Commonwealth into disrepute; and (6) similar substantial reasons. 4 Pa.Code § 101.21(a). We note that the Commission has *not* promulgated regulations defining just cause for the removal of a civil service employee. Thus, as a matter of law, good cause for suspension is *not* the same as just cause for removal from employment.

3. The Commission's regulations state that suspensions pending internal investigation may not exceed an aggregate of more than sixty work days in a calendar year. 4 Pa.Code § 101.21(c). We note that May 1, 2003, which is the date of Woods' removal, is sixty work days from February 4, 2003, the date of Woods' suspension. The record here contains no evidence that the Center actually conducted an internal investigation before removing Woods from employment after the sixty-day suspension.

   The Commission's regulations state that an employee suspended pending investigation by an external agency may be suspended for the duration of the external investigation and up to thirty consecutive work days after the conclusion of the external investigation. 4 Pa. Code § 101.21(d). Here, there is no evidence that the Center knew about the external investigation being conducted by the police into the possible perjury by Woods. When the police concluded their external investigation, they arrested Woods. If the Center had known about the external investigation by police and suspended Woods pending its conclusion, the Center could have suspended Woods for only thirty days following the arrest.

   Finally, the Commission's regulations state that, when an investigation reveals cause for disciplinary action, the suspension pending investigation is converted into the disciplinary action. 4 Pa.Code § 101.21(b)(2). Thus, here, once the Center decided to remove Woods from his employment, Woods' suspension converted into a removal. For that reason, the Commission considered the removal to be the sole personnel action on appeal in this case. (Commission's adjudication at 6 n. 2.)

(Findings of Fact, No. 2.) Ultimately, on June 23, 2003, Woods accepted a plea bargain whereby he pled guilty to a summary offense of criminal mischief and received a $50.00 fine in return for the dismissal of the criminal charges.[4] (Findings of Fact, No. 16.)

Woods appealed his removal to the Commission, and, on September 25, 2003, a hearing was held on the matter. After considering the evidence presented, the Commission sustained Woods' suspension and his removal from employment. The Commission held that the Center had just cause for the removal; specifically, the Center concluded that publicity about the arrest negatively impacted Woods' ability to be a role model for the students. (*See* Commission's Adjudication at 9.) Woods now petitions this court for review of that determination.[5]

## I. Just Cause

■ Woods argues that the Center failed to demonstrate just cause for his removal from employment. In particular, Woods contends that the Center failed to prove that his "standing with the students over which he had responsibilities ha[d] been compromised." (Woods' brief at 14.) We agree.

Section 807 of the Civil Service Act (Act)[6] provides, "No regular employe in the classified service shall be removed except for just cause."[7] The concept of just cause is not statutorily defined, but this court has stated:

We are able to discern that the legislative intent relating to one's relationship with the classified service turns upon a merit concept. This means that any 'personnel action' carried out by the Commonwealth is to be scrutinized in the light of such merit criteria, as has the party failed to properly execute his duties, or has he done an act which hampers or frustrates the execution of same. The criteria must be job-related and in some rational and logical manner touch upon competency and ability.

*Davis v. Youth Development Center Department of Public Welfare*, 96 Pa.Cmwlth. 337, 507 A.2d 915, 916 (1986) (quoting *Corder v. Civil Service Commission*, 2 Pa. Cmwlth. 462, 279 A.2d 368, 371 (1971)).

In determining whether the Center had just cause to remove Woods from his employment, we look to our decision in *Davis* for guidance. Davis was a houseparent at a residential treatment facility for adjudicated delinquents, and, like Woods, Davis was responsible for serving as a role model to his students. When Davis was arrested on drug-related charges, a local newspaper reported the arrest, and, as a result, the facility suspended Davis. After the arrest became general knowledge among the students, the facility discharged Davis. The issue before this court was whether Davis' arrest, by itself, constituted just cause for his discharge. This court held that, because of Davis' sensitive position *and* "the student body's awareness" of the criminal

---

4. We note that, when the Center discharged Woods on May 1, 2003, the Center did not know whether Woods would be exonerated or convicted of the felony charge.

5. This court's scope of review is limited to determining whether a constitutional right has been violated, an error of law has been made or whether the findings of fact made by the Commission are supported by substantial

evidence. *Department of Corrections v. Roche*, 654 A.2d 64 (Pa.Cmwlth.), *appeal denied*, 541 Pa. 644, 663 A.2d 695 (1995).

6. Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. § 741.807.

7. Thus, a civil service employee is *not* an at-will employee.

charges, the facility had just cause to terminate Davis' employment. *Id.* at 917.

Thus, where the job duties of a civil service employee require the employee to be a role model for young people, an arrest and the imposition of criminal charges, by itself, may constitute just cause for removal from employment *if the young people are aware of the arrest and criminal charges. Id.*

Here, the Commission found that the police did not arrest Woods at his assigned cottage until after the students left for daily activities. There is no evidence, or finding, that any student witnessed the arrest. The Center presented newspaper articles written about Woods' arrest, but it presented no competent evidence that any student ever read the newspaper articles, and the Commission made no such finding. The Center submitted evidence that television news shows covered the arrest, but the Center offered no competent evidence that any student ever saw or heard the news coverage, and the Commission made no such finding.[8]

Because the Center failed to establish that the students at the Center were aware of Woods' arrest and the criminal charges, the arrest, by itself, does not constitute just case for removal. *Id.*

## II. Notice

Having concluded that the Center failed to prove that it had just cause to remove Woods from his employment, it is not necessary to address Woods' other arguments. However, because it is important for government agencies to give their civil service employees proper notice of the reasons for disciplinary action, we will ad-

dress Woods' argument that the Center never informed him that the reason for his removal was the adverse impact of publicity on his ability to be a role model for the students. (*See* Woods' brief at 11–12.)

Section 950 of the Act, *added by* section 27 of the Act of August 27, 1963, P.L. 1257, *as amended,* 71 P.S. § 741.950, states that, in the case of permanent separation, written notice of the personnel action shall set forth the reason or reasons for the action. The regulation at 4 Pa.Code § 105.3 states that notices of removal shall include "a clear statement of the reasons therefore.... Notices determined to be defective may result in the reversal of the personnel action." 4 Pa.Code § 105.3.

Here, the Commission found that the Center's May 1, 2003, removal letter to Woods stated only that he was discharged because his felony arrest for perjury *violated the Governor's Code.* (Findings of Fact, No. 2.) However, the Governor's Code does *not* state that an employee is to be discharged following a felony arrest. The Governor's Code does *not* state that an employee is to be discharged when publicity about a felony arrest adversely affects the employee's ability to perform his job duties. The Governor's Code states that an employee is to be discharged when a felony arrest results in a felony *conviction.* That did not occur here.[9] Thus, the Center gave Woods a reason for his removal that cannot be applied to a proper discharge.

Moreover, this court has indicated that a violation of the Governor's Code, by itself, does not constitute sufficient reason to discharge a civil service employee. *Aiello v. Department of Environmental Resources,*

---

8. The Center asserts in its brief, "There can be no reasonable doubt that the [Center's] students were well aware of [Woods'] arrest." (Center's brief at 10.) However, the Center cites no evidence to support this assertion.

9. As indicated above, Woods pled guilty to the summary offense of criminal mischief and was ordered to pay a $50 fine as a penalty.

122 Pa.Cmwlth. 216, 551 A.2d 664, (1988). A civil service employee may be discharged only for just cause under section 807 of the Act. *Id.* This court explained:

> [The Governor's Code] is not a statute but an executive order which has been codified in the Pennsylvania Code. As such, it does not take precedence over statutory provisions to the contrary....
>
> In no event ... may any executive order be contrary to any constitutional or statutory provision, nor may it reverse, countermand, interfere with, or be contrary to any final decision or order of any court. *The Governor's power is to execute the laws and not to create or interpret them.*

*Id.* at 665 (citations omitted) (emphasis added). According to the findings of the Commission, the Center's removal letter referred *solely* to the Governor's Code. As a matter of law, the notice did not provide Woods with *any* reason that constitutes just cause for his removal. *See id.* For that reason, we conclude that the Center's defective notice justifies a reversal of Woods' removal from employment.

Because the Center failed to prove that it had just cause to remove Woods from employment and because the Center failed to give Woods proper notice of the reasons for his removal from employment, we reverse.

### ORDER

AND NOW, this 7th day of December, 2004, the order of the State Civil Service Commission (Commission), dated January 13, 2004, is hereby reversed. It is further ordered that Marvin J. Woods, Jr. shall be reinstated to his previous position with back pay for the full period of the suspension and removal.