912 A.2d 803

Marvin J. WÓODS, Jr.,

v.

STATE CIVIL SERVICE COMMISSION (New Castle Youth
Development Center, Department of Public Welfare),

Appeal of New Castle Youth Development Center,
Department of Public Welfare.

Supreme Court of Pennsylvania.

Argued Sept. 11, 2006.

Decided Dec. 27, 2006.

338

340

Jeffrey Schmoyer, Esq., Pittsburgh, for Department of Public Welfare.

Allen D. Andrascik, Esq., Kelker & Andrascik, Rochester, for Marvin J. Woods, Jr.

Frederick C. Smith, Jr., Esq., State Civil Service Commission, for State Civil Service Commission.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Justice BALDWIN.

On May 1, 2003, Appellee, Marvin J. Woods, Jr. (Woods) was removed from his employment as a Youth Development Counselor at the New Castle Youth Development Center (Center), a residential facility operated by the Pennsylvania Department of Public Welfare. Woods had been a Youth Development Counselor at the Center for twelve years. The Center houses children committed to the facility as a result of their delinquent conduct. We are asked to consider whether, pursuant to section 807 of the Civil Service Act, 71 P.S. § 741.807, the Center possessed just cause to remove Mr. Woods from his employment.[1]

The removal of Mr. Woods from his employment was predicated on his arrest on February 3, 2003 on charges of perjury, a third degree felony, and false swearing, a second degree misdemeanor. The charges arose from activities unrelated to his employment.[2] The arrest took place at a residential cottage housing thirty-five students on the campus of the Youth Development Center. At the time of his arrest, the students residing in the cottage had left for their daily activities. As a Youth Development Counselor at the Center, Woods' duties included the direction and development of treatment programs for the students in his care, assisting in individual and group counseling sessions, regularly evaluating and reviewing each student's progress, writing monthly court reports, and aiding in the overall operation of the cottage to which he was assigned.

Woods' arrest generated significant media attention, including television news and newspaper coverage. R. 46a–48a. In response to the media attention, the Center received inquiries from members of the community, the courts, probation offi-

1. 71 P.S. 741.807. Removal.
 No regular employe in the classified service shall be removed except for just cause.

2. The perjury and false swearing charges concerned testimony given by Woods in an unrelated Grand Jury Investigation.

cers, and family members of the students residing at the facility, expressing concern about the integrity of the Center's personnel. R. 52a–53a.

By letter dated February 4, 2003, the Center notified Woods that he was being suspended for sixty days without pay "pending further investigation and the outcome of the criminal charges." R. 15a. Woods filed an appeal with the State Civil Service Commission (Commission) on February 17, 2003 contesting his suspension, asserting that while he had been charged with criminal conduct, he had not been convicted. He also claimed to be innocent. R. 20a. On April 16, 2003 the Center sent Woods a letter scheduling a Pre–Disciplinary Conference. R. 94a–95a. Woods failed to acknowledge receipt of notice and did not appear at the conference.

By letter dated May 1, 2003, Woods was removed from employment. R. 17a–19a. The removal letter indicated that his dismissal was based upon his arrest for the criminal charges against him, particularly the felony charge which, the letter stated, constituted a violation of the Governor's Code of Conduct, Executive Order 1980–18.[3] R. 17a. The letter further indicated that the charges against Woods indicated his unsuitability for continued employment in a position requiring care, custody, and control of students "who may have similar types of offenses," and affected his ability to execute his duties and responsibilities. R. 17a.

On May 18, 2003, Woods filed an appeal with the Commission seeking review of his removal, asserting that while he was charged with criminal conduct, he had not been convicted and therefore his removal was improper. R. 22a. With respect to the criminal charges, on June 23, 2003, Woods accepted a plea

3. 4 Pa.Code § 7.173. Required action when an employe is formally charged with criminal conduct related to his employment with the Commonwealth or which constitutes a felony.

> As soon as practicable after an employe has been formally charged with criminal conduct related to his employment with the Commonwealth or which constitutes a felony, the employe shall be suspended without pay. If the charge results in conviction in a court of law, the employe shall be terminated.

Governor's Code of Conduct, Executive Order 1980–18.

bargain, pleading guilty to a summary offense of criminal mischief and receiving a $50.00 fine in return for the dismissal of the perjury and false swearing charges. R. 73a; R. 96a–107a.

On September 25, 2003, a hearing on Woods' appeal from the decisions of the Center to suspend and then remove him from his employment was held before the Commission. Following the hearing, the Commission affirmed the decision of the Center to dismiss Woods from his employment. Relying on *Mihok v. Dep't of Public Welfare, Woodville State Hospital,* 147 Pa.Cmwlth. 344, 607 A.2d 846 (1992), the Commission reasoned that just cause was required for removal of a civil service employee, and that just cause existed if the factors supporting removal were job related and in some manner rationally and logically touched upon the employee's competence and ability to perform his job duties. Finding that Woods' job duties placed him in a position of care and responsibility of students at the facility, and that Woods was employed in a sensitive position requiring the avoidance of even the appearance of impropriety, the Commission reasoned that Woods' arrest, and the felony charge in particular, provided just cause to warrant his removal. (Citing *Com., Dept. of Justice Bureau of Corrections v. Grant,* 22 Pa.Cmwlth. 582, 350 A.2d 878 (1976)) (Arrest alone without a conviction was sufficient to remove an employee who occupied a highly sensitive position requiring the avoidance of even the appearance of impropriety). The Commission further noted that Woods' ability to interact with students' families and other staff members and co-workers had been compromised, and concluded that regardless of whether Woods was ultimately convicted, his arrest had negatively affected his competence and ability to perform his job duties.

On appeal, the Commonwealth Court reversed the decision of the Commission. Initially, the Commonwealth Court noted that section 807 of the Civil Service Act specifies that "no regular employe in the classified service shall be removed except for just cause." 71 P.S. § 741.807. Relying on its own precedent in *Davis v. Youth Dev. Center, Dept. of Public*

*Welfare,* 96 Pa.Cmwlth. 337, 507 A.2d 915 (1986), the Commonwealth Court reasoned that where the employee's job duties require him to be a role model for young people, an arrest and the imposition of criminal charges, by itself, may constitute just cause for removal from employment, but only if the young people are aware of the arrest and the criminal charges. In the instant case, there was no evidence presented at the hearing showing that the students witnessed or heard about the arrest. *Woods v. State Civil Service Comm'n (New Castle Youth Dev. Ctr., Dep't of Public Welfare),* 865 A.2d 272, 276 (Pa.Cmwlth.Ct.2004). Therefore, the Commonwealth Court concluded that because the Center failed to establish that the students were aware of Woods' arrest and criminal charges, the arrest by itself did not constitute just cause for removal. *Id.*

▆▆▆▆ Our standard of review of Civil Service Commission adjudications is limited to a determination of whether constitutional rights have been violated, errors of law have been committed, or whether the findings of the agency are supported by substantial evidence. Additionally, the standard involves, where appropriate, consideration of the regularity of the practice and procedure of the Commonwealth agency. *Pennsylvania Game Comm'n v. State Civil Service Comm'n (Toth),* 561 Pa. 19, 26, 747 A.2d 887, 889 (2000) (citations omitted), reaffirming *Bowman v. Dept. of Envtl. Res.,* 549 Pa. 65, 700 A.2d 427 (1997). Furthermore, appellate review of an agency decision may include, as a component, consideration of whether the agency's determination represents an abuse of discretion. *Pennsylvania Game Comm'n,* 561 Pa. at 27 n. 6, 747 A.2d at 891 n. 6.

▆▆▆▆ Appellant, New Castle Youth Development Center, asserts that the Commonwealth Court erred in failing to find that just cause existed to warrant Woods' removal. Removal of Civil Service employees is governed by the Civil Service Act (Act). 71 P.S. § 741.1 *et seq.* Section 807 of the Act requires that no classified employees in the Civil Service may be

removed from their employment, absent "just cause."[4] The term "just cause" is not defined in the Act. However, we have held that just cause "must be merit-related and the criteria must touch upon competency and ability in some rational and logical manner." *Pennsylvania Game Comm'n v. SCSC (Toth)*, 561 Pa. 19, 28, 747 A.2d 887, 892 (2000). "What constitutes ample just cause for removal must necessarily be largely a matter of discretion on the part of the head of the department. To be sufficient, however, the cause should be personal to the employ[ee] and such as to render him unfit for the position he occupies, thus making his dismissal justifiable and for the good of the service." *Petition of Bell*, 396 Pa. 592, 617, 152 A.2d 731, 743 (1959), citing *Thomas v. Connell*, 264 Pa. 242, 107 A. 691 (1919).

At the time of Woods' removal, the Center was aware only that Woods had been arrested and criminally charged, but did not know at that time whether Woods would be exonerated or convicted. Nevertheless, the Center opted to remove Woods from his position on grounds that his conduct, particularly the felony charge, violated the Governor's Code of Conduct and that the seriousness of the charges, and Woods' conduct underlying the charges, indicated his unsuitability for continued employment.

The Center argues that Woods occupied a position of trust, care, and control of students, in which he served as a role model and confidante, and that Woods' duties as a communicator and facilitator between the Center and the students' families made him a visible representative of the Commonwealth's program. The Center also maintains that Woods' arrest impaired his ability to interact with staff and co-workers at the facility. The Center asserts that workers employed in positions such as Woods' must be perceived as honest, ethical, and highly principled and that Woods arrest on

4. 71 P.S. § 741.3(d).
 "Classified service" includes:
 (1)All positions now existing or hereafter created in the Department of Public Welfare, including the county boards of assistance but excluding positions in the general hospitals not otherwise included in the classified service.

perjury and false swearing charges therefore compromised and diminished his competency and ability to perform his job, and tarnished the Center's reputation and credibility as an institution. The Center contends that the highly sensitive nature of his employment required Woods to avoid even the appearance of impropriety, citing a string of cases wherein the appearance of wrongdoing by an employee in a sensitive position was found to compromise that employees ability to perform his duties. *See e.g. Dep't of Justice, Bureau of Corrections v. Grant*, 22 Pa.Cmwlth. 582, 350 A.2d 878 (1976); *Davis v. Com., Youth Development Ctr.*, 96 Pa.Cmwlth. 337, 507 A.2d 915 (1986); *Dep't of Corrections v. Roche*, 654 A.2d 64 (Pa.Cmwlth.Ct.1995); *Aiello v. Com., Dept' of Envtl. Res.*, 122 Pa.Cmwlth. 216, 551 A.2d 664 (1988); *Philadelphia County Bd. of Assistance, Dep't of Public Welfare v. Vinson*, 75 Pa.Cmwlth. 518, 463 A.2d 73 (1983). Therefore, the Center urges this Court to adopt a standard under which the appearance of impropriety caused by the criminal arrest of an employee in a highly sensitive position, in itself, provides just cause for removal from employment.

While Woods' arrest may have warranted suspension, we disagree that his arrest alone, on perjury and false swearing charges, established just cause for removal. Woods' arrest alone did not rationally and logically touch upon his competency and ability to perform his job as to warrant dismissal pursuant to section 807 of the Civil Service Act, and therefore did not provide just cause for removal. While the Center observes that Woods occupied a position requiring trust and integrity, his arrest alone, albeit on *crimen falsi* charges, failed to demonstrate that his trustworthiness or integrity had been compromised. The Center raises concerns about the damage to the reputation and credibility of the institution occasioned by Woods' arrest. However, just cause for removal must be related to the employee's competency and ability to perform his job, or arise from conduct rendering him unfit for the position he occupies. Injury to the reputation of the institution does not meet these criteria. On the same grounds, we decline to adopt a *per se* rule that the "appear-

ance of impropriety" by an employee in a "highly sensitive positions" provides just cause to warrant dismissal.[5]

 While the Center may not have possessed just cause to remove Woods from his employment based solely on his arrest, the Center in the instant case did have the option of suspending Woods pursuant to section 803 of the Civil Service Act, pending resolution of the charges against him. Section 803 of the Act reads as follows:

An appointing authority may for good cause suspend without pay for disciplinary purposes an employe holding a position in the classified service. Suspensions, including suspensions pending an internal investigation, shall not exceed sixty working days in one calendar year; however, suspensions pending investigation by external agencies may be maintained up to thirty working days after conclusion of the external investigation. . . .

71 P.S. § 741.803.

Unlike removal which must be based on "just cause," section 803 requires a valid suspension to be based on "good cause." While "good cause" is not defined in the Act, the Rules of the Civil Service Commission as set forth in the Pennsylvania Administrative Code provide that good cause for suspension exists where the employee, *inter alia*, "engages in conduct either on or off duty which may bring the service of the Commonwealth into disrepute." 4 Pa.Code § 101.21. Woods' arrest, which resulted in the credibility and reputation of the Center being compromised, clearly constituted grounds for suspension. *See e.g., Salvati v. Berks County Bd. of Assistance Dept. of Public Welfare,* 81 Pa.Cmwlth. 629, 636, 474 A.2d 399, 402 (1984) (arrest tended to bring the public service into disrepute and constituted good cause for suspen-

5. The Commonwealth Court concluded in the instant case that where the job duties of a civil service employee require the employee to be a role model for young people, an arrest and the imposition of criminal charges, by itself, may constitute just cause for removal if the young people are aware of the arrest and criminal charges. Absent any indication that an employee's competence and ability to perform his job had been compromised, however, the mere fact of student awareness of an arrest is, alone, insufficient to provide just cause for removal.

sion); *Lylo v. Com. Dep't of Env't Resources*, 83 Pa.Cmwlth. 101, 106, 477 A.2d 897, 900 (1984) (Appellant's arrest for scandalous or disgraceful conduct which tended to bring the service of the Commonwealth into disrepute constituted good cause for suspension). We are aware of the Center's substantial interest in protecting its student population from the possibility of harm. Permitting suspensions of employees pending the outcome of criminal proceedings serves the dual purpose of removing potentially harmful employees from their positions pending further inquiry, and protecting the employer from further damage to its credibility and reputation.

Section 803 of the Act makes clear that continued suspension of an employee is permissible for up to sixty working days, pending an internal investigation. 71 P.S. § 741.803. In the instant case however, while the suspension letter indicated that Woods was suspended pending investigation, the record does not reveal the outcome of the investigation, nor indicate that the results of the internal investigation provided a basis for removing Woods from his employment. Rather, the Center relies solely upon the fact of Woods' arrest as grounds for dismissal.

In addition to suspensions pending internal investigation, Section 803 of the Civil Service Act permits an employer to suspend an employee pending investigation by *external* agencies. Such suspensions may be maintained for up to thirty working days after the conclusion of the external investigation. The Legislature stated that an employee may be suspended pending investigation by external agencies, therefore external resolutions of criminal proceedings would be included.[6] To interpret section 803 to exclude resolution of criminal proceedings would limit an employer's ability to suspend an employee who has been arrested for up to sixty working days only, after which the employer would be required to reinstate or remove that employee, regardless of the outcome of the criminal

6. The Center was not required to request an external investigation, but rather the Center had the option of suspending Woods pending the external resolution, through the judicial process, of the criminal proceedings against Woods.

charges.[7] Such a conclusion appears to contradict the clearly expressed requirement of the Civil Service Act requiring that classified employees be removed only for just cause. Since, in the instant case, the arrest alone clearly did not constitute just cause for removal, to permit Woods' dismissal based solely on an arrest would be out of keeping with the merit-based objectives of the Civil Service Act.

In *Brown v. Com., Dep't of Transp.*, 34 Pa.Cmwlth. 461, 467, 383 A.2d 978, 981 (1978), the Commonwealth Court reasoned that where an employee is arrested, he need not necessarily be convicted of the crimes with which he is charged in order to be removed from his employment. The Commonwealth Court reasoned in *Brown* that the public employer is not required to justify its removal of an employee by proof beyond a reasonable doubt. While we agree that a public employer is not required to overcome a "reasonable doubt" burden of proof in order to remove an employee, a public employer is required to demonstrate, by substantial evidence, that just cause exists for removal. *Lewis v. Civil Service Comm'n, City of Philadelphia*, 518 Pa. 170, 175, 542 A.2d 519, 522 (1988). The employer in the instant case failed to meet that burden.

New Castle Youth Development Center next argues that the Commonwealth Court erred in finding that the Center did not furnish Woods with adequate notice of his removal as required by the Civil Service Act, 71 P.S. § 741.950. In concluding that the Center's removal notice was deficient, the Commonwealth Court indicated that the notice stated only that Woods was being discharged because of his felony arrest for perjury in violation of the Governor's Code of Conduct, Executive Order 1980–18.[8] The Commonwealth Court rea-

7. It is arguable that an employer may have additional options including reassignment of the employee to less sensitive duties within the agency pending the outcome of the criminal proceeding. However, there is no indication that employer in the instant case considered this or any other option, and it is not necessary to address those possibilities and their effects here.

8. See n. 3. *supra.*

soned that the Governor's Code states only that an employee is to be discharged if an arrest on felony charges results in a felony conviction, and since that did not occur in the instant case, the Center's reasons for removal were improper. Moreover, the Commonwealth Court observed that a violation of the Governor's Code itself does not constitute sufficient reason to discharge an employee. The Commonwealth Court reasoned that the Governor's Code is not a statute but an executive order, and therefore it does not take precedence over the statutory provisions to the contrary which require dismissal of civil service employees to be predicated on just cause.[9] Since the removal notice referred solely to the Governor's Code, the Commonwealth Court concluded that it failed to provide any reason constituting just cause for dismissal and was therefore defective.

While we agree that the Governor's Code of Conduct permits dismissal of a civil service employee only upon a felony conviction, we do not find that the Center's removal notice was, as a whole, inadequate. Section 950 of the Civil Service Act which governs removal of civil service employees of the classified service requires written notice of any personnel action to be provided to the employee, and that the notice must set forth the reasons for the personnel action. 71 P.S. § 741.950.[10] The purpose of the notice requirement is to satisfy due process by affording an employee reasonable notice of the

9. See *Werner v. Zazyczny*, 545 Pa. 570, 581, 681 A.2d 1331, 1336 (1996) (Only executive orders which are authorized by the Constitution or promulgated pursuant to statutory authority have the force of law) and *Pagano v. Pennsylvania State Horse Racing Comm'n*, 50 Pa.Cmwlth. 499, 503, 413 A.2d 44, 45 (1980) (citations omitted) (The Governor may issue proclamations or communications as executive orders absent constitutional or statutory authority, but such gubernatorial communications will not be enforced by the Courts).

10. 71 P.S § 741.950. Notice.

Written notice of any personnel action taken pursuant to the provisions of this act shall be provided to the affected employe. Such notice shall be furnished within time limits prescribed by the rules of the commission. Copies of such notices shall be provided to the director upon request. The notice shall in the case of the permanent separation, suspension for cause, or involuntary demotion of a regular employe set forth the reason or reasons for the action.

charges against him so that he will have sufficient opportunity to answer the charges and contest his removal. *Chavis v. Philadelphia County Bd. of Assistance, Dep't of Public Welfare,* 29 Pa.Cmwlth. 205, 208, 370 A.2d 445, 447 (1977). "For such notice to be adequate, it must at the very least contain a sufficient listing and explanation of any charges so that the individual involved can know against what charges he must defend himself if he can." *McClelland v. Com., State Civil Service Comm'n,* 14 Pa.Cmwlth. 339, 343, 322 A.2d 133, 135 (1974).

The removal notice provided to Woods indicated that the reason for his removal was his arrest on the perjury and false swearing charges, specifically the felony charge which constitutes a violation of the Governor's Code. Additionally, the letter read as follows:

> The seriousness of both charges, and your conduct underlying these charges, indicates that you are unsuitable for continued employment at New Castle Youth Development Center. Your job duties require you to have care, custody and control of students who may have similar types of offenses. It is the position of the Department that the charges impact upon your ability to execute your duties and responsibilities.

(R. 17a).

The Commonwealth Court overlooked this additional language of the removal notice in concluding that the notice was deficient. When read in its entirety, the content of the removal notice clearly provides Woods with a sufficient explanation of the charges for him to know against what allegations he must defend. The removal letter specifically refers to those aspects of Woods' employment responsibilities that were affected by his arrest, namely his ability to care for and control the students who may have similar types of offenses. See *Chavis v. Philadelphia County Bd. of Assistance, Dep't of Public Welfare,* 29 Pa.Cmwlth. 205, 209, 370 A.2d 445, 448 (1977) (The reasons listed in a notice of dismissal should at least refer specifically to those aspects of the employee's responsibility in which he was found deficient, and should

identify the deficiencies with a degree of particularity). We hold therefore that while the reasons for dismissal were insufficient to provide just cause, the notice of dismissal adequately apprised Woods of the reasons for removal and provided him with sufficient notice to defend against the charges.

Accordingly, the order of the Commonwealth Court is affirmed to the extent that Woods shall be reinstated to his previous position with back pay for the full period of suspension and removal. With respect to the Commonwealth Court's determination that notice was inadequate, we reverse.

Chief Justice CAPPY and Justice SAYLOR and BAER join this opinion.

Justice CASTILLE concurs in the result.

Justice NEWMAN files a concurring and dissenting opinion in which Justice EAKIN joins.

Justice NEWMAN, concurring and dissenting.

I agree with the Majority's determination that the removal letter provided sufficient notice to Woods. However, I respectfully dissent from the Majority's conclusion that the New Castle Youth Development Center (Center) lacked just cause for his termination.

Woods worked as a counselor for juveniles who were committed to the Center after being adjudicated delinquent. (Reproduced Record (R.R.) 37a, 39a). Woods was assigned to a cottage unit that housed approximately thirty-five children. (R.R. 38a). He served as a role model to these students and interacted with their families and the court on a regular basis. (R.R. 51a–54a). As a counselor, he assisted the students in individual and group therapy sessions and wrote a monthly report for the court. (R.R. 38a). Usually, families visited on a biweekly basis and Woods was expected to report to them on the progress of their child at the Center. (R.R. 54a).

On February 3, 2003, at approximately 9:00 a.m., state and local police arrived at the Center to arrest Woods on criminal

charges of perjury,[1] a third-degree felony, and false swearing, a second-degree misdemeanor.[2] Charles Mitcham (Mitcham), the Program Director, requested that the officers wait to arrest Woods until the students living in the cottage left for their daily activities. (R.R. 41a–42a). The officers agreed and waited for the students to leave before arresting Woods in the lobby of the cottage. (R.R. 42a). A local television station aired coverage of the arrest that evening on the six o'clock news. (R.R. 46a). Several newspapers and television stations publicized information about the arrest and the underlying incident leading to these criminal charges. (R.R. 47a–48a).

Because of the media attention, the integrity of the Center and its counselors was questioned by families of the students, members of the court, and other counselors. (R.R. 53a–54a). Mitcham stated one family member asked, "[W]hat kind of employees do you have up there that are being arrested that we are seeing on television that are working with our students?" (R.R. 53a). He further noted that the Center lost credibility with the probation officers and even with the students. (Id.) Thus, the Center terminated Woods from his employment as a counselor.

Prior to his termination, the Center suspended Woods the day after the arrest in accordance with 4 Pa.Code § 7.173 because he was charged with a felony. In the suspension letter, the Center indicated that it would be conducting an internal investigation. As the Majority explains, the findings of the internal investigation were never revealed but the Center scheduled a Pre–Disciplinary Conference that Woods chose not to attend. Pursuant to 4 Pa.Code § 101.21(c), the Center could not continue the suspension past sixty work days. Although the Center had other options at the conclusion of the sixty-day period, it believed that there was just cause for Woods' removal.

A civil servant may only be removed from employment for just cause. 71 P.S. § 741.807. Although the Civil Service Act

1. 18 Pa.C.S. § 4902.
2. 18 Pa.C.S. § 4903(a).

does not define just cause, this Court has determined that just cause "must be merit-related and the criteria must touch upon competency and ability in some rational and logical manner." *Pa. Game Comm'n v. State Civil Serv. Comm'n (Toth),* 561 Pa. 19, 747 A.2d 887, 892 (2000) (quoting *Galant v. Dep't of Envtl. Res.,* 534 Pa. 17, 626 A.2d 496, 497 (1993)). The Majority found that an arrest on perjury and false swearing charges does not rationally and logically touch upon the competency and ability of Woods to act as a counselor to delinquent youths. I disagree because Woods, as a counselor, is required to maintain a relationship of trust and respect with the students and their families. After the media publicized information about the arrest of Woods on *crimen falsi* charges, the family members of the students raised questions concerning not only the integrity of the Center but of its counselors and specifically Woods.

The criminal charges compromised the trustworthiness and integrity of Woods. I agree with the Majority that this Court should not adopt a *per se* rule that any appearance of impropriety provides just cause for removal. Nevertheless, the Commonwealth Court has frequently determined that the appearance of impropriety by an employee in a highly sensitive position justified removal. *See Dep't of Corr. v. Roche,* 654 A.2d 64, 69 (Pa.Cmwlth.1995) (correctional officer arrested for perjury removed because his failure to report the assaults on prison inmates to the grand jury was a dereliction of duty and reflected his inability to perform his duties); *Aiello v. Dep't of Envtl. Res.,* 122 Pa.Cmwlth. 216, 551 A.2d 664, 665–66 (1988) (mine inspector convicted of copyright infringement, though unrelated to his job, removed because the appearance of wrongdoing by an employee in a sensitive position reflects negatively on his ability to perform duties); *Davis v. Youth Dev. Ctr. Dep't of Pub. Welfare,* 96 Pa.Cmwlth. 337, 507 A.2d 915, 917 (1986) (houseparent at a youth development center arrested on criminal charges removed because of the sensitivity of his position and the awareness on the part of the student body); *Phila. County Bd. of Assistance v. Vinson,* 75 Pa. Cmwlth. 518, 463 A.2d 73, 76 (1983) (income maintenance

worker with a prior conviction for robbery and conspiracy removed because he occupied a highly sensitive position); *Stone v. State Corr. Inst. at Graterford,* 55 Pa.Cmwlth. 188, 422 A.2d 1227, 1228 (1980) (prison guard possessing marijuana at a state correctional institution removed because the offense violated the parameters of his sensitive position and cast doubt on his competency and ability to execute duties); *Dep't of Justice v. Grant,* 22 Pa.Cmwlth. 582, 350 A.2d 878, 880 (1976) (prison guard arrested for violating the Uniform Firearms Act removed because he held a highly sensitive position that required him to avoid the appearance of impropriety). While these cases are not binding on this Court, I cite them to show that public employers expect their employees in highly sensitive positions to have an untarnished reputation.

Admittedly, some of these cases dealt with convictions on criminal charges, but an arrest alone was sufficient in *Roche, Davis,* and *Grant.* In the matter *sub judice,* Petitioner was arrested on perjury and false swearing charges and pled guilty to criminal mischief in exchange for the dismissal of these charges. The Commonwealth Court relied on *Davis* to conclude that the Center lacked just cause because there was no evidence that the students were aware of the charges. In *Davis,* the court held that "the commission's findings regarding the sensitivity of Mr. Davis' position as a houseparent and the student body's awareness of his criminal charges support the commission's order upholding Mr. Davis' employment termination for just cause." *Davis,* 507 A.2d at 917. By applying the holding of *Davis* strictly, the Commonwealth Court believed that there must be evidence that the students were aware of the arrest and criminal charges. I do not agree that the lack of awareness on the part of the students should be the determining factor.

There should be no bright-line test for what constitutes just cause. Instead, public employers must decide these matters on a case-by-case basis. As long as their decision is rationally and logically related to the competency of the employee to perform his or her duties, it should be upheld. In this case, the nature of the charges involved, the publicity generated

from the charges, and the awareness on the part of the families of the students demonstrate that Woods' ability to work, as a counselor was impaired. Therefore, I respectfully dissent.

Justice EAKIN joins this concurring and dissenting opinion.