# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Betty Cauler,                                        :
                              Petitioner              :
                                                     :
              v.                                      :     No. 5 C.D. 2017
                                                     :     Submitted: May 19, 2017
State Civil Service Commission                       :
(Pennsylvania Liquor Control Board),                 :
                              Respondent              :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED: September 25, 2017**

Betty Cauler petitions for review of the December 8, 2016 Order of the State Civil Service Commission (Commission), which dismissed Cauler's appeal and sustained the Pennsylvania Liquor Control Board's (Appointing Authority) removal of Cauler from her position as a probationary Intermittent Liquor Store Clerk. The Commission determined that Cauler did not present evidence sufficient to establish that her removal was the result of discrimination violative of Section 905.1 of the Civil Service Act (Act),[1] 71 P.S. § 741.905a. On appeal, Cauler

---

[1] Act of August 5, 1941, P.L. 752, added by Section 25 of the Act of August 27, 1963, P.L. 1257, *as amended*, 71 P.S. § 741.905a.

argues that her removal was based on age and/or gender-based discrimination and retaliation. Because substantial evidence supports the Commission's credibility determinations, and Cauler failed to set forth sufficient evidence to demonstrate that her removal was due to any of the asserted forms of discrimination, we affirm.

## I.    Background

### A. *History*

Cauler began working for the Appointing Authority as a seasonal employee at store #3901 from November 2014 to January 4, 2015. She was hired as a probationary Intermittent Liquor Store Clerk effective January 20, 2015. Cauler was removed for two incidents, one occurring on April 19, 2015, and the second on May 14, 2015,[2] in which she was charged with violating Appointing Authority's prohibitions against failing to obey a manager's orders, being discourteous to customers or other employees, "[v]iolating common decency or morality," and insubordination (Work Rules). (Adjudication, Findings of Fact (FOF) ¶¶ 10-12.)

After an investigation, Cauler was notified by letter dated May 27, 2015, that she was discharged from her position effective at 3:00 p.m. the same day pending affirmation by the Appointing Authority, based on the charge of conduct unbecoming a Commonwealth employee in store #3901. Specifically, she "displayed a poor attitude toward supervisory personnel" on April 19 and May 14, 2015, and also "directed inappropriate and profane remarks toward supervisory personnel" on May 14, 2015. (*Id.* ¶ 2.) Cauler was then advised, via letter dated June 11, 2015, that her removal had been affirmed. (*Id.* ¶ 1.) Cauler appealed to

---

[2] Although the Commission refers to the April and May incidents as having occurred in 2016, (Adjudication, Findings of Fact (FOF) ¶¶ 6, 8), the two incidents occurred in 2015.

the Commission, asserting that her removal was based on discriminatory reasons in violation of Section 905.1 of the Act. Cauler requested reinstatement and back pay.

### B. *Proceedings before the Commission*

A hearing was held before the Commission on August 31, 2015, pursuant to Section 951(b) of the Act,[3] 71 P.S. § 741.951(b). Cauler testified on her own behalf and presented, as on cross-examination, the testimony of five witnesses, including: Assistant Manager at store #3901 (Assistant Manager 1); District Manager; and Human Resource (HR) Analyst. The Appointing Authority presented the testimony of one witness, the other Assistant Manager at store #3901 (Assistant Manager 2). Documentary evidence was also introduced.

Cauler testified as follows.[4] Store #3901's manager (Store Manager) indicated to Cauler that he wanted a particular younger male employee to work at store #3901. (Reproduced Record (R.R.) at 182-83.) Assistant Manager 1 spoke derogatorily to Cauler, blamed things on her, was frequently rude to her, and told her she was too slow. Assistant Manager 1 also gave Cauler a nickname, "Pokey," which he used in front of other employees, and compared her negatively to male employees regarding the counting of the money in her register. (*Id.* at 184.) Regarding the April 19 incident, Cauler admitted that she was directed by Assistant Manager 1 to turn off the light in the wine room, but asked her coworker to do it

---

[3] Act of August 5, 1941, P.L. 752, added by Section 27 of the Act of August 27, 1963, P.L. 1257, *as amended*, 71 P.S. § 741.951(b). Section 951(b) permits appeals based on alleged violations of Section 905.1 of the Act, which prohibits discrimination with regard to personnel actions. The burden of proof lies with the employee alleging discrimination in an appeal brought under Section 951(b) of the Act. *See* 4 Pa. Code § 105.16(a).

[4] Cauler's testimony can be found on pages 174-210 of the Reproduced Record.

instead because the coworker was closer and Cauler's knees were hurting. (*Id.* at 192-94.) Cauler also recalled an incident that occurred on April 24, 2015, during which Assistant Manager 1 used profane language in front of both Cauler and a customer from out of state.

Cauler next explained the difference between a manager closing out a register at the end of a shift and having a manager collect a "limit," which means an employee has excess money in her register. On May 14, 2015, Cauler told Assistant Manager 1 that she had reached her limit, but he refused to take it from her as required.[5] Cauler stated that at about 9:40 p.m., she asked, "[Assistant Manager 1], can you take me out? I didn't order him. I asked him. And he started laughing, and then he said, no, but I'll take your limit." (*Id.* at 198.) Then, Cauler explained, he went over and took out one of her male coworker's drawers instead. Cauler recalled the conversation with Assistant Manager 1 outside the store that evening, during which he admitted that "he refused to take [her] drawer out to spite [her], . . . because [he] didn't like that [she] asked [him] to take [her] out." (*Id.*) When asked if she used profanity toward Assistant Manager 1, Cauler stated "No, nothing towards him. No profanity towards him whatsoever." (*Id.* at 201.) Cauler told Assistant Manager 1 that she was going to speak to a manager. Assistant Manager 1 told Cauler he could set up a meeting with Store Manager, but he never did. Cauler felt singled-out by Assistant Manager 1 because he was not rude to any of the other female or male employees. Although Cauler complained of Assistant Manager 1's treatment of her to an assistant manager and an employee at store #3920, she admitted that she did not make an anonymous complaint to the

---

[5] When employees have reached their limit, they are required to call the manager to come and take the limit. (R.R. at 195.)

Appointing Authority's tip-line or tell District Manager anything about the alleged discrimination. (*Id.* at 191-92, 210.)

Assistant Manager 1 testified[6] regarding the April 19 incident, recalling that Cauler and another employee were waiting by the door to leave for the day. Because Cauler was not engaged in any work duties, Assistant Manager 1 asked that she "please go back and turn off the light in the wine room?" (*Id.* at 103, 121.) However, Cauler turned to a coworker and stated, "[Assistant Manager 1] wants you to go turn the light off," which the coworker did. (*Id.* at 103.) Assistant Manager 1 wrote Cauler up for this incident, which he considered insubordination, and he denied basing his decision on Cauler's age or gender. (*Id.* at 104.) Regarding the May 14 incident, Assistant Manager 1 stated that Cauler directed him to remove her register for the night. Assistant Manager 1 was offended and took another male employee's register out instead. (*Id.* at 111.) During the conversation that followed after work, Cauler expressed that she was unhappy with Assistant Manager 1's treatment of her and his management style. Cauler also used profanity during this conversation, including "the F word." (*Id.* at 128-29.) Assistant Manager 1 admitted that he removed the male employee's register to spite Cauler for her insubordinate act of ordering him to take her register out and to assert his authority as manager, but he did not look at it as a female versus male situation. (*Id.* at 115, 130-31.) Assistant Manager 1 wrote Cauler up for insubordination the next morning for this incident. He denied basing his actions and decision to write Cauler up on her age or gender. (*Id.* at 126.)

---

[6] Assistant Manager 1's testimony can be found on pages 91-134 of the Reproduced Record.

Cauler attempted to impeach Assistant Manager 1's credibility based upon subsequent disciplinary action taken by the Appointing Authority against Store Manager and Assistant Manager 1 for inventory shortages, which resulted in their suspension, resignation, and/or demotion. (*Id.* at 50, 55-56, 68, 94-95.) Cauler cited to the principle of *crimen falsi* as support that such evidence was relevant to these proceedings.[7] The Appointing Authority responded that *crimen falsi* requires an actual conviction, and here, there was no proof of a conviction. (*Id.* at 50-51.)

District Manager testified[8] that she met with Cauler to discuss the two write-ups from Assistant Manager 1. During District Manager's initial investigation and fact-finding on Cauler's conduct, Cauler denied that the incidents had happened and did not mention anything to District Manager about discrimination. District Manager then submitted her findings to the Appointing Authority's labor department, and an investigation was performed. Regarding the disciplinary process, in general, District Manager explained that when "an employee does something that warrants a discipline for a permanent employee, and they're only probationa[ry], then they would be removed for that offense." (*Id.* at 140.)

HR Analyst testified[9] that he is employed by the Appointing Authority and was assigned to investigate the two incidents. In doing so, HR Analyst reviewed Assistant Manager 1's two statements regarding the April and May incidents, District Manager's statement, the Appointing Authority's Work Rules, and Cauler's signed acknowledgment of the Work Rules. HR Analyst also interviewed Assistant Manager 1 but did not interview Cauler. Based on his investigation and

---

[7] *Crimen falsi* offenses are those involving dishonesty or false statements. *See* Rule 609(a) of the Pennsylvania Rules of Evidence, Pa. R.E. 609(a).

[8] District Manager's testimony can be found on pages 137-73 of the Reproduced Record.

[9] HR Analyst's testimony can be found on pages 36-68 of the Reproduced Record.

6

the fact that Cauler was a probationary employee, HR Analyst concluded that Cauler's actions on those dates constituted violations of the Work Rules. (*Id.* at 59-63.) As a result, HR Analyst recommended that Cauler be removed. HR Analyst denied that he made his decision based on Cauler's age or gender. HR Analyst also testified about the disciplinary action taken against Assistant Manager 1. HR Analyst was involved in this investigation and stated that Assistant Manager 1 was suspended from his position and then demoted to a Liquor Store Clerk I position. HR Analyst stated, however, that there was no evidence that Assistant Manager 1 had been stealing. (*Id.* at 53-54.)[10]

Assistant Manager 2, the Appointing Authority's sole witness, testified[11] that she was 60 years old and occasionally worked with Assistant Manager 1. She stated that Assistant Manager 1 never treated her in a discriminatory manner based on her age or gender. Assistant Manager 2 observed Cauler's attitude during other shifts and stated that "I wouldn't say that she was an A-plus employee. . . . [T]here were times that she went against [certain] procedures[.]" (*Id.* at 222-23.) Cauler objected based on relevancy, but the objection was overruled.

By Adjudication and Order mailed December 8, 2016, the Commission dismissed Cauler's appeal and sustained her removal effective May 27, 2015. The

---

[10] Cauler also presented the testimony of the General Manager of store #3920 and a part-time liquor store clerk of that store with whom Cauler worked. General Manager testified briefly that he knew Cauler because she sometimes worked at his store and that Cauler never discussed with him how Assistant Manager 1 treated her or that she was being discriminated against. Part-time liquor store clerk testified that she worked with Cauler twice and that Cauler never mentioned anything about any problems she was having at store #3901 to her. Part-time liquor store clerk stated it was only after she heard Cauler had been terminated that she recommended that Cauler speak to a supervisor if there had been a problem.

[11] Assistant Manager 2's testimony can be found on pages 212-25 of the Reproduced Record.

7

Commission reviewed the record and concluded that Cauler failed to prove "that her removal was in any way influenced by improper considerations." (Adjudication at 17.) The Commission stated that Cauler did not present any evidence to dispute the charges against her or establish discrimination. Rather, the Commission found that the hearing testimony established that Cauler redirected a direct order by Assistant Manager 1 on April 19, and she "used inappropriate and profane language in a work-related discussion with" Assistant Manager 1 on May 14. (*Id.*) The Commission further found that there was no evidence in the record to establish that Cauler's removal was made in retaliation for her complaint about Assistant Manager 1's treatment of her. (*Id.* at 18.) The Commission credited HR Analyst's testimony and found that Cauler's violations of the Work Rules justified her removal as a probationary employee. (*Id.*) The Commission expressly rejected and excluded from its determination all evidence with regard to the disciplinary action taken by the Appointing Authority against Assistant Manager 1 because Cauler did not prove that such evidence was relevant to the Appointing Authority's decision to remove her. (*Id.* at 18-19.) For these reasons, the Commission concluded that Cauler did not present sufficient evidence to prove that her removal was due to discrimination in violation of Section 905.1 of the Act. This appeal followed.

## II.    Arguments on Appeal

### A. *Cauler's Arguments*

On appeal, Cauler argues that her removal was based on age and/or gender-based discrimination and retaliation. Cauler argues that the testimony of HR Analyst and Assistant Manager 1 establishes a *prima facie* case of age and/or

8

gender-based discrimination and challenges the credibility of HR Analyst, and Assistant Manager 1's testimony based on the Appointing Authority's subsequent disciplinary action against him. She also argues that she established a *prima facie* case of age and/or gender-based discrimination based on circumstantial and direct evidence. Cauler further argues that she established a *prima facie* case of discrimination because her removal was in retaliation for complaining about discrimination to Assistant Manager 1.

### B. *Appointing Authority's Arguments*

The Appointing Authority[12] preliminarily argues that this Court should not consider the merits of Cauler's appeal because she has failed to properly develop her arguments in her brief, she has not cited to any relevant legal authority, and her brief does not comply with various rules of the Pennsylvania Rules of Appellate Procedure. On the merits of the appeal, the Appointing Authority argues that Cauler is attempting to persuade this Court to revisit the Commission's credibility determinations. Further, it maintains the disciplinary action taken against Store Manager and Assistant Manager 1 in an unrelated disciplinary matter is irrelevant to the issue of whether Cauler's removal was based on discrimination. The Appointing Authority also asserts that Cauler failed to establish a *prima facie* case of discrimination because she did not testify regarding her age and did not present any evidence to support her belief that she was replaced by a younger male employee. The Appointing Authority argues she did not provide direct evidence of discrimination because there was no evidence presented that Assistant Manager 1's actions or behavior were in any way motivated by Cauler's age or gender. Lastly,

---

[12] The Appointing Authority intervened in this matter on February 1, 2017.

9

the Appointing Authority asserts that Cauler was not removed in retaliation for her complaint of discriminatory treatment because she never reported to anyone that she had been discriminated against.

## III. Discussion

### A. *Cauler's Brief*

Appointing Authority first argues that we should not consider the merits of Cauler's appeal. While we agree that Cauler's brief is somewhat difficult to follow because it does not fully develop some of her arguments, cites either no relevant authority or authority that is not binding upon this Court, and does not comply with various rules on appellate briefing as set forth in the Pennsylvania Rules of Appellate Procedure, these deficiencies are not so substantial that meaningful appellate review has been precluded. As such, we decline to dismiss Cauler's appeal and will address the arguments raised therein. *See Arnold v. Workers' Comp. Appeal Bd. (Lacour Painting, Inc.)*, 110 A.3d 1063, 1067-68 (Pa. Cmwlth. 2015) (stating that this Court "may ignore even 'egregious violations' of the Rules of Appellate Procedure if the[] defects do not preclude meaningful appellate review" and declining to dismiss appeal because employer was not prejudiced and meaningful appellate review was not precluded based on defects in claimant's brief).

### B. *Age and/or Gender Discrimination*

Cauler alleges that her removal was for non-merit factors, specifically her sex and age, and thus is considered "[t]raditional . . . discrimination." *Pronko v. Dep't of Revenue*, 539 A.2d 456, 462 (Pa. Cmwlth. 1988); *see also* 71 P.S.

10

§ 741.905a. Section 905.1 of the Act addresses "traditional" forms of discrimination and provides that "[n]o officer or employe of the Commonwealth shall discriminate against any person in . . . any . . . personnel action with respect to the classified service because of . . . race, national origin or other non-merit factors." 71 P.S. § 741.905a; *see also* 71 P.S. § 741.951(b) (permitting an appeal based upon a claim that a personnel action was taken for discriminatory reasons in violation of Section 905.1). The burden of proof lies with the employee alleging discrimination in an appeal brought under Section 951(b) of the Act. *See* 4 Pa. Code § 105.16(a).

The standard of proof for gender discrimination claims arising under the Pennsylvania Human Relations Act[13] was set forth by our Supreme Court in *Allegheny Housing Rehabilitation Corporation v. Pennsylvania Human Relations Commission*, 532 A.2d 315, 319 (Pa. 1987):

> If the plaintiff produces sufficient evidence that, if believed and otherwise unexplained, indicates that more likely than not discrimination has occurred, the defendant must be heard in response. Absent a response, the 'presumption' of discrimination arising from the plaintiff's *prima facie* case stands determinative of the factual issue of the case. In other words, if the employer rests without producing evidence, the plaintiff must prevail if he or she has produced sufficient evidence to make out a *prima facie* case. If, however, the defendant offers a non-discriminatory explanation for the dismissal, the presumption drops from the case. As in any other civil litigation, the issue is joined, and the entire body of evidence produced by each side stands before the tribunal to be evaluated according to the preponderance standard: Has the plaintiff proven discrimination by a preponderance of the evidence? Stated otherwise, once the defendant offers evidence from which the trier of fact could rationally conclude that the decision was not discriminatorily

---

[13] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-963.

11

motivated, the trier of fact must then 'decide which party's explanation of the employer's motivation it believes.' The plaintiff is, of course, free to present evidence and argument that the explanation offered by the employer is not worthy of belief or is otherwise inadequate in order to persuade the tribunal that her evidence does preponderate to prove discrimination. She is not, however, entitled to be aided by a presumption of discrimination against which the employer's proof must 'measure up.'

*Allegheny Housing*, 532 A.2d at 319 (citation omitted). This Court has applied this test to "traditional discrimination" claims arising under Section 905.1 of the Act. *Henderson v. Office of the Budget*, 560 A.2d 859, 862-64 (Pa. Cmwlth. 1989) (quoting *Allegheny Housing*, 532 A.2d at 319).

We are cognizant that our "scope of review of a decision of the Commission is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether substantial evidence supports the necessary findings of fact made by the Commission." *Webb v. State Civil Serv. Comm'n (Dep't of Transp.)*, 934 A.2d 178, 184 n.2 (Pa. Cmwlth. 2007). The Commission is the trier of fact, and therefore, we recognize that "[q]uestions of credibility and the weight to be accorded evidence are determined by [the] Commission." *Thompson v. State Civil Serv. Comm'n (Beaver Cnty. Area Agency on Aging and The Cnty. of Beaver)*, 863 A.2d 180, 184 (Pa. Cmwlth. 2004). This Court "may not weigh the evidence or substitute our judgment for that of the Commission when . . . its essential findings are . . . supported by substantial evidence." *Benjamin v. State Civil Serv. Comm'n*, 332 A.2d 585, 588 (Pa. Cmwlth. 1975). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . ." *Quinn v. State Civil Serv. Comm'n*, 703 A.2d 565, 571 (Pa. Cmwlth. 1997). "When reviewing a Commission decision, we view the evidence, and all reasonable inferences arising

12

from the evidence, in a light most favorable to the prevailing party[,]" here, the Appointing Authority. *Perry v. State Civil Serv. Comm'n (Dep't of Labor and Indus.)*, 38 A.3d 942, 948 (Pa. Cmwlth. 2011).

Accordingly, Cauler had the burden of producing sufficient evidence of discrimination. If she meets her burden, the burden would then shift to the Appointing Authority to offer a non-discriminatory explanation for the removal. If the Appointing Authority is successful, it is left to the Commission to decide which side's reason or reasons for the removal it believes. *See Henderson*, 560 A.2d at 863-64.

### C. Prima Facie Case of Discrimination

#### 1. HR Analyst's and Assistant Manager 1's Testimony

Cauler first asserts[14] that HR Analyst's and Assistant Manager 1's testimony establishes discrimination. In her brief, Cauler has quoted excerpts from HR Analyst's and Assistant Manager 1's testimony and, it appears, has attempted to make her arguments in short headings that precede these quotations. (Cauler's Br. at 12-16.) For example, she states that HR Analyst had no contact with her, "met with the disgraced assistant supervisor," "favoritism by [HR Analyst] to males," and, regarding Assistant Manager 1, "take drawer out – favoring males," "not overly rude," and "spiting her." (*Id.*) She appears to assert that the Appointing Authority gives preference to males over females as demonstrated by: HR Analyst's testimony that Cauler was removed for her conduct, while Assistant Manager 1 was only suspended and then demoted for his conduct; and Assistant Manager 1's testimony regarding the May 14 incident. It appears that she is

---

[14] Cauler's first and second issues are considered together for ease of discussion.

13

attempting to establish a *prima facie* case of discrimination based on this testimony and to persuade this Court to revisit the Commission's credibility determinations. However, Cauler does not cite any authority in support or otherwise develop these "arguments." Notwithstanding the absence of any argument, we cannot disturb the Commission's credibility determination, and further, neither HR Analyst's nor Assistant Manager 1's testimony establishes discrimination.

Here, the Commission found HR Analyst's testimony to be more credible than the other evidence offered by Cauler, which it was empowered to do. *Thompson*, 863 A.2d at 184. HR Analyst, who investigated the April 19 and May 14 incidents on behalf of the Appointing Authority, testified that his recommendation to remove Cauler was based on the fact that Cauler was a probationary employee and, as a result of his investigation, his determination that Cauler's violations of the Appointing Authority's Work Rules constituted insubordination. (R.R. at 59-63.) HR Analyst also testified that his recommendation was not based on Cauler's age or gender. Based upon this credited testimony, the Commission specifically found that "[t]he recommendation to remove [Cauler] for her actions on April 19 and May 14 was based upon a conclusion that her actions violated the . . . [A]ppointing [A]uthority's" Work Rules, (FOF ¶ 13), and concluded that the Appointing Authority appropriately relied upon such violations to justify her removal from her probationary position, (Adjudication at 18). Accordingly, we cannot disturb the Commission's credibility determination with respect to HR Analyst, whose testimony supports the Commission's determination that Cauler's removal was not based on discrimination.

Regarding Cauler's assertion that preference is given to males over females because she was removed, yet Assistant Manager 1 was only suspended and demoted, Cauler was a probationary employee and Assistant Manager 1 was not. This Court has previously held that a "probationary status civil service employee does not enjoy the job security afforded persons on regular status, who may be removed only for just cause." *Cunningham v. State Civil Serv. Comm'n*, 332 A.2d 839, 840 (Pa. Cmwlth. 1975). District Manager's testimony that when "an employee does something that warrants a discipline for a permanent employee, and they're [sic] only probationa[ry], then they would be removed for that offense," reflects this principle. (R.R. at 140.) Cauler's status as a probationary employee did not afford her the same job security that Assistant Manager 1 enjoyed, such that the degree of discipline imposed should have been the same. Accordingly, the Commission did not err in concluding that such evidence does not prove discrimination.

Furthermore, to the extent that Cauler challenges, generally, the credibility of Assistant Manager 1's testimony, we reiterate that it is the Commission, not this Court, that determines the weight to be afforded the evidence, *Thompson*, 863 A.2d at 184, and we cannot substitute our judgment for that of the Commission so long as substantial evidence supports its findings, *Benjamin*, 332 A.2d at 588. Cauler does not argue that there was no substantial evidence to support the Commission's findings that she redirected a direct order from Assistant Manager 1 on April 19, and used inappropriate and profane language toward Assistant Manager 1 on May 14. (FOF ¶¶ 6-9.) In addition to HR Analyst's credited testimony, Assistant Manager 1 likewise testified that Cauler's age and gender played no role in his decision to write her up for the April 19 and May 14 incidents because she did not

follow his direct order and ordered him to take her register out. (R.R. at 121-22, 125-26.) District Manager's testimony also supports that the Appointing Authority's decision to remove Cauler was based solely upon her violations of the Work Rules while she was still a probationary employee. (*Id.* at 140, 163.) We therefore conclude that there was substantial evidence to support the Commission's finding that Cauler's removal was the result of her insubordinate actions on April 19 and May 14, and not because of discrimination.

Cauler next asserts that the Commission erred by not considering the disciplinary actions taken by the Appointing Authority against Store Manager and Assistant Manager 1 for inventory manipulation, which resulted in their suspension, resignation, and/or demotion because such conduct shows that their testimony cannot be believed. (Cauler's Br. at 19.) Cauler contends that inventory manipulation is *crimen falsi*, and, thus, undermines the credibility of Assistant Manager 1. The Appointing Authority responds that the use of those disciplinary actions to impeach the credibility of Store Manager and Assistant Manager 1 is improper because specific instances of conduct may not be admitted unless they constitute *crimen falsi*, which requires an actual conviction, and here, there is no actual conviction.

Our review of the record disclosed that Store Manager did not testify at the hearing, and there was no evidence that he was involved in Cauler's removal. In fact, the Commission found that the recommendation to remove Cauler was not made by any of store #3901's managers but by HR Analyst. (FOF ¶ 13.) Cauler also did not offer any evidence that would establish the relevance of those disciplinary actions to the Appointing Authority's decision to remove her, other than arguing that Assistant Manager 1 cannot be believed based on the principle of

16

*crimen falsi*. However, Cauler's reliance on the principle of *crimen falsi* is misplaced. Rule 609(a) of the Pennsylvania Rules of Evidence provides that "[f]or the purpose of attacking the credibility of any witness, evidence that the witness has been **convicted of a crime**, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement." Pa. R.E. 609(a) (emphasis added). Such crimes are considered *crimen falsi*. Here, there is no evidence that Assistant Manager 1 was convicted of a crime constituting *crimen falsi* in relation to the conduct for which the Appointing Authority disciplined him. These disciplinary actions were thus not an appropriate basis for impeachment. Further, the Commission rejected and excluded from its determination any and all evidence regarding those disciplinary actions taken against Assistant Manager 1, which we do not find to be error. (Adjudication at 18-19.) Accordingly, we are bound by the Commission's evidentiary weight determinations in that regard.

### 2. Circumstantial Evidence of Discrimination

Cauler argues that she established a *prima facie* case of age and/or gender-based discrimination because she is an elderly female, she was qualified for the job, there was no issue concerning her work performance, she was fired, and she was replaced by a younger male employee after her removal. (Cauler's Br. at 27.)

Notably, notwithstanding that she was arguing discrimination based on her age, Cauler did not present any evidence of her own age. Instead, Cauler relied on her testimony that Store Manager indicated to her that he wanted a particular younger male employee to work at store #3901 and that the younger male employee did in fact start working at store #3901 after her removal. However, the

17

Commission rejected Cauler's claim that such evidence proved a *prima facie* case of age and/or gender-based discrimination. Although Store Manager did not testify at the hearing, the Commission found that store #3901 managers had nothing to do with the decision to remove her. (FOF ¶ 13; Adjudication at 18.) Moreover, the mere fact that a younger male employee was hired to work at store #3901 after Cauler's removal does not, by itself, prove age or gender discrimination. Cauler's witness, District Manager, testified that she had to move part-time employees around to different stores, which resulted in the younger male employee taking the position of another male employee in store #3901 due to an issue with employees adjusting inventory incorrectly. (R.R. at 142-47.) In other words, Cauler was not replaced by a younger male employee. In fact, District Manager testified that she placed **another older female** employee **in Cauler's position** at store #3901 after Cauler was removed. (*Id.* at 148.) Accordingly, the Commission did not err in concluding that Cauler did not establish a *prima facie* case of age and/or gender-based discrimination.

### 3. Direct Evidence of Discrimination

Cauler also argues that she provided direct evidence of discrimination based on Assistant Manager 1's testimony that he was rude to her, acted to spite her, and singled her out. However, other than a statement that she did not use profanity towards Assistant Manager 1 on May 14, R.R. at 201,[15] Cauler did not really dispute Assistant Manager 1's version of the April 19 or May 14 incidents, which

---

[15] While the Commission recognized that Cauler testified that she did not use profanity "towards" Assistant Manager I, it found that she used profanity in her discussion with him. (FOF ¶ 9.)

18

evidenced insubordination and a violation of the Work Rules, and instead attempted to justify her actions. (FOF ¶¶ 7, 9, 13; Adjudication at 17.) Cauler did not present any other evidence that would establish that Assistant Manager 1's other behavior was in any way motivated by her age or gender. Our Supreme Court has stated, albeit in a different employment context, that "the work environment is a microcosm of society. It is not a shelter from rude behavior, obscene language, incivility, or stress. While we do not suggest that insensitive behavior is socially acceptable in the work place, it is unrealistic to expect that such behavior will not occur." *Phila. Newspapers, Inc. v. Workmen's Comp. Appeal Bd. (Guaracino)*, 675 A.2d 1213, 1219 (Pa. 1996). Though the Commission recognized that Assistant Manager 1 "was rude, spiteful and inconsiderate," it determined that such evidence "neither refute[s] the charges nor establish[es] discrimination." (Adjudication at 17.) We agree that, under these circumstances, the mere fact that Assistant Manager 1 may have been rude to Cauler, acted to spite her, and singled her out does not establish direct evidence of discrimination. Accordingly, the Commission did not err in concluding that Cauler has not established, through direct evidence, that her removal was based on age and/or gender-based discrimination.

Even if Cauler had established a *prima facie* case of age and/or gender-based discrimination and the burden shifted to the Appointing Authority to present a non-discriminatory reason for her removal, the Appointing Authority met its burden. The Appointing Authority's credible evidence established that Cauler was removed because she redirected a direct order by Assistant Manager 1 on April 19, and she "used inappropriate and profane language in a work-related discussion with" Assistant Manager 1 on May 14 in violation of the Appointing Authority's Work

19

Rules. (FOF ¶¶ 7, 9, 13; Adjudication at 17.) The Commission determined that the Appointing Authority **appropriately relied on such violations in removing Cauler** from her probationary employment. (Adjudication at 17.) Our review of the record reveals that the Commission's specific findings regarding the reasons for Cauler's removal are supported by substantial evidence. Therefore, the Commission did not err in concluding that Cauler failed to meet her burden of proving age and/or gender-based discrimination.

*D. Discrimination by Retaliation*

Lastly, Cauler argues that she experienced discrimination in the form of retaliation because she complained to Assistant Manager 1 about his treatment of her, and the next day, he wrote her up. Cauler merely asserts that such retaliation is forbidden. Claims of discrimination in the form of retaliation that are based upon non-merit factors are considered "traditional discrimination" subject to Section 905.1 of the Act. *See, e.g.*, *Perry*, 38 A.3d at 957-58. As such, they are governed by the same standard set forth in *Henderson*. *Id.* It was, therefore, Cauler's burden to produce sufficient evidence of discrimination.

Here, the Commission rejected Cauler's claim that her removal was in retaliation for her complaint to Assistant Manager 1 about the way he was treating her. Initially, contrary to Cauler's assertion, Assistant Manager 1 wrote Cauler up contemporaneously with each incident. Additionally, although Cauler complained of Assistant Manager 1's treatment of her to an assistant manager and an employee at store #3920, neither of whom testified at the hearing, she admitted that she did not make an anonymous complaint to the Appointing Authority's tip-line or tell District Manager anything about the discrimination. (R.R. at 187, 191-92, 210.)

20

Moreover, HR Analyst, Assistant Manager 1, and District Manager all testified that the decision to discipline or remove Cauler was based **solely** upon her violations of the Appointing Authority's Work Rules while she was still a probationary employee. Because Cauler never officially complained to her superiors about the alleged discrimination, such that they would have been made aware of her complaint, the Commission did not err in concluding that Cauler has not presented sufficient evidence that her removal was retaliatory, and, thus, she has not made out a *prima facie* case.[16]

## IV. Conclusion

Therefore, viewing the record in the light most favorable to the Appointing Authority, which prevailed below, as we are required to do, the Commission did not err in concluding that Cauler did not set forth sufficient evidence to demonstrate that her removal was due to any of the asserted forms of discrimination in violation of Section 905.1 of the Act. Accordingly, the Commission's Order is affirmed.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[16] For the reasons set forth in the prior discussion, even if Cauler had established a *prima facie* case of retaliation, the Appointing Authority met its burden of presenting a non-discriminatory reason for Cauler's removal, and there was no error in the Commission's determination that this non-discriminatory reason was the motivation for Cauler's removal.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Betty Cauler,                                          :
                            Petitioner          :
                                                      :
            v.                                        :      No. 5 C.D. 2017
                                                      :
State Civil Service Commission                        :
(Pennsylvania Liquor Control Board),                  :
                            Respondent          :


# **O R D E R**


    **NOW**, September 25, 2017, the December 8, 2016 Order of the State Civil Service Commission, entered in the above-captioned matter, is hereby **AFFIRMED**.


 

                                  _____
                                  **RENÉE COHN JUBELIRER,** Judge